IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 15, 2005

## STATE OF TENNESSEE v. PAUL WILSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-01773    Chris Craft, Judge**

_____

**No. W2005-00307-CCA-R3-CD  - Filed December 22, 2005**

_____

The defendant, Paul Wilson, was found guilty by a Shelby County jury of aggravated robbery and sentenced to thirty years at sixty percent as a career offender. On appeal, he argues that the trial court erred by: (1) refusing to accept his guilty plea; and (2) removing him from the courtroom and refusing to grant a mistrial following his outburst. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Phyllis Aluko (on appeal), Memphis, Tennessee, and Robert Wilson Jones, Chief Public Defender, and Karen Massey (at trial), Memphis, Tennessee, for the appellant, Paul Wilson.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michelle Park, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

The evidence presented at trial showed that the defendant entered a Circle K convenience store on the evening of June 12, 2003, and requested two quarters in exchange for fifty pennies from the store clerk, William Koenig. Koenig, the victim, complied and the defendant left the store. Approximately fifteen minutes later, the defendant returned to the store and requested change for one of the quarters previously given to him. As the victim prepared to give the defendant change for the quarter, the defendant pulled an object out from under his shirt that appeared to be a gun, wrapped in a cloth. The defendant told him, "[D]on't make me shoot you" and "Give me all the money." The victim gave the defendant all the money in the drawer, but the defendant inquired about "20's under

the drawer." When the victim told the defendant "there aren't any[,]" the defendant reached over the counter, lifted the drawer, and checked for himself. The defendant ordered the victim to the ground and left the store. After waiting to make sure the defendant was gone, the victim called 911.

The victim gave the 911 operator a detailed description of both the defendant and his vehicle. He described the defendant as a black male wearing a white cap, a blue shirt and driving a Cadillac with heavy damage to the side. Later that evening, Memphis police officers spotted a car and driver matching the description given by the victim and stopped the vehicle. Right before the officers stopped the vehicle, one of the officers saw the defendant toss an object out of the car window. However, the object was never found. The officers arrested the defendant and found a white towel and hat in his car, as well as twenty four dollars on the defendant's person. The officers returned to the scene of the robbery with the defendant, and the victim identified the defendant as the individual who robbed him.

A public defender was assigned to the defendant as his counsel and immediately began working on a plea bargain for the defendant. As a result, the defendant was offered a plea bargain of fifteen years. However, over the course of the guilty plea hearing, the defendant told the trial court that he would not be taking the plea if he could afford a lawyer of his own choosing. The defendant also repeatedly interrupted, talked over, and argued with the trial court. Because of the defendant's rude behavior, the trial court held the defendant in contempt. The trial court also refused to accept the defendant's plea, finding that he had told several untruths and was only pleading guilty so he could "file a post[-] conviction [petition] saying the judge forced me to plead guilty because my lawyer wasn't any good."

The case went to trial. During the state's closing argument, the defendant began to comment on the prosecutor's reference to a gun barrel seen by the victim. The defendant repeatedly stated "I did not have a gun" and "You [sic] going to charge me with aggravated robbery, give me 30 years and I didn't have a gun." After the defendant's disruptive behavior, the trial court removed the defendant from the courtroom and gave the jury a curative instruction. The trial court instructed the jury that it must disregard the defendant's unsworn statements in deciding the case. The trial court also questioned each juror with regard to whether he or she could decide the case on the proof without regard to the defendant's outburst. Each juror answered in the affirmative, and both parties proceeded with closing arguments. The jury found the defendant guilty of aggravated robbery.

## ANALYSIS

### A. Failure to Accept Guilty Plea

On appeal, the defendant first argues that the trial court abused its discretion in failing to accept his guilty plea. Generally, the failure to raise an issue in a motion for new trial results in a waiver. See Tenn. R. App. P. 3(e); Tenn. R. App. P. 36(a). However, we may address the issue in the event there was plain error on the part of the trial court. State v. Smith, 24 S.W.3d 274, 282

(Tenn. 2000).  If this court is to review the defendant's claim, we must do so through the process of "plain error" review embodied in Tennessee Rule of Criminal Procedure 52(b), which provides:

> An error which has affected the substantial rights of an accused may be noticed at any time, even though not raised in the motion for a new trial or assigned as error on appeal, in the discretion of the appellate court where necessary to do substantial justice.

There are five factors which must be present for a court to determine "plain error" exists:

> (a)  the record must clearly establish what occurred in the trial court;
> (b)  a clear and unequivocal rule of law must have been breached;
> (c)  a substantial right of the accused must have been adversely affected;
> (d)  the accused did not waive the issue for tactical reasons; and
> (e)  consideration of the error is "necessary to do substantial justice."

Smith, 24 S.W.3d at 282 (quoting State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  The presence of all factors must be established before a trial error is considered "plain error."  Smith, 24 S.W.3d at 283.

It is our view that the defendant has waived the issue; and furthermore, that the trial court's refusal to accept the defendant's guilty plea was not plain error.  The defendant asserts that each of the Adkission factors are present in this case; however, we fail to see what "clear and unequivocal rule of law" was breached.  While we recognize that "[t]he right to plead not guilty has inherently and constitutionally within it the right to plead guilty[,]" the defendant does not have an absolute right to have his guilty plea accepted by the trial court.  See Santobello v. New York, 404 U.S. 257, 262 (1971); Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995); Lawrence v. State, 455 S.W.2d 650, 651 (Tenn. Crim. App. 1970).  The trial court, in its discretion, determines whether a defendant is entering his or her plea knowingly, intelligently, and voluntarily and can accept or reject the plea based on that determination.  Tenn. R. Crim. P. 11(c), (d); Goosby, 917 S.W.2d at 706.  Accordingly, having found no plain error, the issue is waived.

### B.  Removal of Defendant and Failure to Grant Mistrial

The defendant also argues that the trial court erred in removing him from the courtroom and failing to grant a mistrial following his outburst during the state's closing argument.  We will address the two assertions in turn.

### 1. Removal

It is well-settled that a defendant has a fundamental right under both the federal and state constitutions to be present during his or her trial.  See State v. Muse, 967 S.W.2d 764, 766-67 (Tenn. 1998) (citing U.S. Const. amends. V, VI, XIV; Tenn. Const. art. I, § 9).  Additionally, Rule 43(a) of

the Tennessee Rules of Criminal Procedure gives the defendant the right to be present during trial. Tenn. R. Crim. P. 43(a). "Presence at trial means that the defendant must be present in court from the beginning of the impaneling of the jury until the reception of the verdict and the discharge of the jury." Muse, 967 S.W.2d at 766 (citation and internal quotations omitted).

Although it is a fundamental right, the right to be present at trial can be waived by a defendant. Id. at 767. The methods of waiving this right are contained in Rule 43 of the Tennessee Rules of Criminal Procedure, which states in relevant part:

(a) Presence Required. — Unless excused by the court upon defendant's motion, the defendant shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) Continued Presence Not Required. — The further progress of the trial to and including the return of the verdict and imposition of sentence shall not be prevented and the defendant shall be considered to have waived the right to be present whenever a defendant, initially present:

. . . .

(2) After being warned by the court that disruptive conduct will cause the defendant to be removed from the courtroom, persists in conduct which is such as to justify exclusion from the courtroom.

If a trial proceeds in the voluntary absence of the defendant or after the defendant's removal from the courtroom, he or she must be represented in court by competent counsel; and, if the defendant has been removed from the courtroom, he or she shall be given reasonable opportunity to communicate with counsel during the trial. If a trial is proceeding with the defendant excluded from the courtroom because of disruptive conduct, the court shall periodically determine at reasonable intervals whether the defendant will then signify willingness to avoid creating a disturbance if allowed to return to the courtroom and shall permit such return when the defendant so signifies and the court reasonably believes the defendant.

In this case, the trial court discussed, on the record, its reasons for removing the defendant from the remainder of the trial. The findings were as follows:

During the state's closing argument, [the defendant] made an outburst. . . . So when [the defendant] started making this outburst and I asked him to be quiet. He would not. I found him in contempt, I think four times now for outburst in the courtroom. And when this trial started, I told him in no uncertain terms that if he made an outburst I would have to remove him from the courtroom. And I asked him if he was going to make an outburst and he really, really, didn't commit himself. . . . So in

taking all of that in consideration, I just decided to ask the deputies just to remove him after asking him to be quiet and he wouldn't be quiet.

The defendant asserts that he "was removed from the court as soon as he began to speak[,]" but our review of the entire record indicates otherwise. The defendant was incredibly disruptive during the pretrial proceedings and based on this history of misbehavior, the trial court asked the defendant "not to talk out loud . . . in front of the jury" at the beginning of the trial. Admittedly, the defendant was well-behaved throughout the trial until his outburst during closing argument. However, once the outburst began, the defendant refused to calm down. The defendant repeatedly yelled "I didn't have a gun" in front of the jury, and the trial court determined that the quickest way to end the jury's exposure to the defendant's disruptive behavior was to remove him from the courtroom. In our view, the trial court acted within its discretionary authority by removing the defendant from the courtroom for the remainder of the trial. See Tenn. R. Crim. P. 43(b)(2); Illinois v. Allen, 397 U.S. 337, 343 (1970). Accordingly, the defendant is not entitled to relief on this issue.

## 2. Mistrial

Turning to the trial court's refusal to grant a mistrial, we note that the determination of whether to grant a mistrial rests within the sound discretion of the trial court. State v. Smith, 871 S.W.2d 667, 672 (Tenn. 1994). The reviewing court should not overturn that decision absent an abuse of discretion. State v. Reid, 91 S.W.3d 247, 279 (Tenn. 2002). A mistrial is usually appropriate in a criminal case only where there is a "manifest necessity." Arnold v. State, 563 S.W.2d 792, 794 (Tenn. Crim. App. 1977). The purpose for declaring a mistrial is to correct damage done to the judicial process when some event has occurred which prevents an impartial verdict. Id. The burden of establishing the necessity for mistrial lies with the party seeking it. State v. Williams, 929 S.W.2d 385, 388 (Tenn. Crim. App. 1996).

The defendant asserts that the trial court's curative instruction was ineffective because "[i]t is highly unlikely that a jury could have totally disregarded [his] confession during the outburst." However, our review leads us to conclude that the defendant has failed to meet his burden of showing a "manifest necessity" requiring a mistrial. The record reflects that the trial court swiftly took action to remove the defendant once he began his outburst. More importantly, the trial court instructed the jury that the defendant's statements were not to be considered in deciding the case. Additionally, the court polled the jurors to ensure that the individuals could still render an impartial verdict. The jurors affirmed that they could do so. Without evidence to the contrary, the jury's compliance with the trial court's curative instruction is presumed. See State v. Vanzant, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983). Accordingly, it is our view the trial court did not abuse its discretion by denying the defendant's motion for a mistrial; thus, the defendant is not entitled to relief on this issue.

## CONCLUSION

Following our review, we affirm the judgment of the trial court.

_____

J.C. McLIN, JUDGE